RECEIVED
JUL 6 2012
JAMES ... NI, Clerk
CINCINNATI, OHIO

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**IVING L. JONES, Jr.**
Individually,
c/o The Brennan Law Office
810 Sycamore St. 2nd Fl.
Cincinnati, OH 45202

Plaintiff

vs.

**B & B FRANCHISING LLC**
**dba Jani-King of Cincinnati**
c/o Patrick Nesbitt, Esq.
Statutory Agent for B&B Franchising, LLC
8050 Beckett Center Dr. Ste 113
West Chester, Ohio 45069

-and-

**BLAKE SEYLHOUWER**
5703 Windridge Drive
Cincinnati, Ohio 45243

-and-

**BASEBALL PARK MANAGEMENT COMPANY LLC**
c/o James A. Marx, Esq.
Statutory Agent for Baseball Park Management Company LLC
100 Joe Nuxhall Way
Cincinnati, Ohio 45202

-and-

**KERMIT SMITH**
**(aka Kermit R. Smith II)**
1532 Ruth Avenue
Cincinnati, Ohio 45207

Defendants.

Case No. 1:12CV568

Judge: J. BECKWITH

M.J. BOWMAN

**COMPLAINT**
(with Jury Demand)

Now comes Plaintiff Iving L. Jones, Jr. for his complaint against Defendants B & B Franchising LLC, doing business as Jani-King of Cincinnati (henceforth, "Jani-King"), Blake Seylhouwer, Baseball Park Management Company LLC, and Kermit Smith (aka Kermit R. Smith II), and states as follows:

**INTRODUCTION**

1. This is an action by Plaintiff Iving L. Jones, Jr. on his own behalf against Defendants due to Defendants' willful failure to pay Mr. Jones his wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq*.; Article II §34a of the Ohio Constitution; the Ohio Minimum Fair Wage Standards Act, ORC §§ 4111.01 *et seq*.; Ohio Rev. Code § 4113.15; and state common law claims for unjust enrichment.

2. The Fair Labor Standards Act "was designed to raise substandard wages ... thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'"[1]

3. Indeed, "Congress passed the FLSA in 1938 to correct and eliminate those 'conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well being of workers.'"[2]

4. Because the FLSA is a remedial statute, it must be interpreted broadly "to effectuate its 'humanitarian and remedial' purpose."[3]

5. The FLSA "broadly defines the 'employer-employee relationship[s]' subject to its reach."[4]

6. Pursuant to FLSA, "'employ' includes to suffer or permit to work," 29 U.S.C. § 203(g); "'employer' includes *any person* acting directly or indirectly in the interest of an employer in relation to an employee ...," 29 U.S.C. § 203(d) [emphasis added]; and "the term 'employee' means any individual

---

[1] *United States v. Rosenwasser, dba Perfect Garment Co.*, 323 U.S. 360, 361 (1945) [internal quotes ommitted].
[2] *Torres-Lopez et al. v. Robert May, et al.*, 111 F.3d 633, 638 (9th Cir. 1997) [qtg. 29 U.S.C. § 202(a)].
[3] *Antenor et al. v. D&S Farms et al.*, 88 F.3d 925, 933 (11th Cir. 1996) [qtg. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)].
[4] *Torres-Lopez*, supra at 638 [qtg. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)].

employed by an employer," 29 U.S.C. § 203(e)(1), a definition that is considered the "broadest definition that has ever been included in any one act."[5]

7. The FLSA's definitions anticipate that multiple employers may be liable for a worker's wages, and the U.S. Supreme Court has held that "an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."[6]

8. Traditional common law concepts of employment are not relevant to the existence of a joint employment relationship under FLSA, which defines "employ" "'with striking breadth,' and in such a way as to 'stretch the meaning of 'employee' to cover some parties who might not qualify under a strict application of traditional agency law principles.'"[7]

9. Accordingly, courts have concluded that FLSA's "'suffer or permit to work' standard was developed to assign responsibility to businesses that did not directly supervise putative employees."[8]

10. The Ohio Constitution requires every employer to pay their employees a constitutionally mandated minimum wage, and the terms "employer," "employee," "employ," and "person" "have the same meanings under Ohio law as under the federal Fair Labor Standards Act." Article II, § 34a.

**JURISDICTION AND VENUE**

11. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331 as this action arises under the laws of the United States, and by 28 U.S.C. §1337 as this action arises under an Act of Congress which regulates interstate commerce.

12. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367.

13. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

---

[5] *Rosenwasser*, supra at 363 n.3 [qtg. 81 Cong. Rec. 7657].

[6] *Zheng et al. v. Liberty apparel Company Inc. et al.*, 355 F.3d 61, 70 (2nd Cir. 2003) [citing the holding of *Rutherford Food*, supra.]; See also 29 C.F.R. § 791.2, establishing "joint employer" liability under the FLSA by regulation.

[7] *Lopez et al. v. Silverman*, 14 F. Supp. 2d 405, 411 (S.D.N.Y. 1998) [qtg. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

[8] *Antenor*, supra at 933.

14. Plaintiff labored for Defendants in this district and the events and/or omissions giving rise to the claims occurred within this district.

15. At all times relevant hereto, Defendants Jani-King and Baseball Park Management Company LLC did business and have offices in this district.

16. At all times relevant hereto, Defendant Blake Seylhouwer was and is, upon information and belief, a resident of Hamilton County and an owner, partner and/or principal of Defendant B & B Franchising LLC (aka "Jani-King of Cincinnati").

17. Upon information and belief, at all times relevant hereto, Defendant Kermit Smith is and was a resident of Hamilton County.

**PARTIES**

18. Plaintiff Iving Jones is an individual residing in Hamilton County, Ohio and at all times relevant hereto was jointly employed by Defendants to clean and pick up trash from Great American Ballpark after Cincinnati Reds home games, and has given his written consent to bring this action to collect unpaid wages under the FLSA and Ohio law, attached hereto as Exhibit A.

19. At all times relevant hereto, Plaintiff was an employee covered by the FLSA, within the meaning of 29 U.S.C. §203(e), and was jointly employed by the defendants pursuant to 29 C.F.R. § 791.2.

20. Defendant B & B Franchising LLC is a foreign corporation incorporated in the state of Colorado and doing business in Ohio as Jani-King of Cincinnati (henceforth referred to herein as "Jani-King") and with a principal place of business in Cincinnati, Ohio.

21. At all times relevant hereto, Defendant B & B Franchising LLC was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and jointly employed Iving Jones pursuant to 29 C.F.R. §791.2.

22. Defendant Blake Seylhouwer is, upon information and belief, a resident of Hamilton County and an owner, officer, partner and/or member of Defendant B & B Franchising LLC.

23. At all times relevant hereto, Defendant Blake Seylhouwer was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and jointly employed Iving Jones pursuant to 29 U.S.C. § 791.2.

24. Defendant Baseball Park Management Company LLC is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio.

25. At all times relevant hereto, Defendant Baseball Park Management Company LLC was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and jointly employed Iving Jones pursuant to 29 U.S.C. § 791.2.

26. Defendant Kermit Smith (aka "Kermit R. Smith, II") is, upon information and belief, a resident of Hamilton County and at all times relevant hereto was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and jointly employed Iving Jones pursuant to 29 C.F.R. § 791.2.

**FACTS**

27. Plaintiff realleges and incorporates each and every allegation of the foregoing paragraphs as if hereby fully restated.

28. At the conclusion of each Cincinnati Reds baseball game at Great American Ballpark, substantial amounts of trash (e.g. cups, wrappers, paper, left over food, etc.) are left behind by the departed fans in the ball park, especially under and around the stadium seats.

29. At all times relevant hereto, Great American Ballpark was owned by Hamilton County, Ohio, but was operated by, and under the control of, Defendant Baseball Park Management Company, LLC per the Management Services Contract of March 17, 2003 (hereafter, "the Contract," attached hereto as Exhibit B) between Hamilton County, Ohio, the Cincinnati Reds and Defendant Baseball Park Management Company LLC.

30. The purpose and business of Defendant Baseball Park Management Company LLC is to "efficiently and professionally operate, manage and maintain" Great American Ballpark, including

"performing and completing all Routine Maintenance and Repair with respect to" Great American Ball Park.[9]

31. According to the Contract, "Routine Maintenance and Repair" means "doing all things necessary or appropriate to (a) keep the Ballpark Property ... in good order and repair which is of a routine, regular and predictable nature" and "(b) keep the Ballpark Property clean and free of debris ..."[10] and includes "sweeping" and "trash ... removal".[11]

32. At all times relevant hereto, Defendant Baseball Park Management Company was "responsible for ... providing and supervising all personnel within the Ballpark Property" on game days.[12]

33. At all times relevant hereto, Defendant Baseball Park Management Company employed as one of its key management personnel a "Superintendent of Maintenance."[13]

34. Upon information and belief, at all times relevant hereto, said Superintendent of Maintenance directed, supervised and managed all "routine maintenance and repair" which Defendant Baseball Park Management Company was obligated to perform under the Contract, including the post-game clean up operations and the workers performing such services.

35. At all times relevant hereto, "all persons employed or engaged by [Baseball Park Management Company]" were "deemed to be agents of [Baseball Park Management Company]."[14]

36. Furthermore, at all times relevant hereto Defendant Baseball Park Management Company was responsible "for the acts and omissions of all of its employees and all of its Subcontractors, their respective employees, agents, invitees, and all other persons performing any of the Services under a contract with, on behalf of, or at the request of [Baseball Park Management Company]."[15]

37. At all times relevant hereto, Defendant Ballpark Management Company was "at all times [to] remain primarily responsible for the Services," (including maintenance and cleaning) and all

---

[9] Exhibit B at 4.
[10] Id. at 3.
[11] Id. at 4.
[12] Id.
[13] Id. at 7.
[14] Id.
[15] Id. at 15.

subcontractors were "subject to all requirements and liabilities, of [Baseball Park Management Company]."[16]

38.     Specifically, at all times relevant hereto, Defendant Baseball Park Management is required to "cause all valid claims ... for labor done ... and services furnished ... for or in connection with any maintenance ... affecting the Ballpark Property, to be fully paid and discharged in a timely manner ...".[17]

39.     Upon information and belief, Defendant Baseball Park Management Company engaged Jani-King to provide workers to perform post-game clean up operations during the 2010 baseball season.

40.     At or about the end of May, 2010, Plaintiff Iving Jones was hired by Defendant Jani-King to clean up trash for Defendant Baseball Park Management Company at the conclusion of each Cincinnati Reds 2010 home game.

41.     Specifically, at all times relevant hereto Mr. Jones was employed as a "blower," whose job was to use a blowing machine to blow trash from under the stadium seats into the aisles, where it would be picked up by other workers called "pickers."

42.     At all times relevant hereto, Mr. Jones and the other clean up workers were required to arrive at the stadium at a set time prior to the conclusion of the baseball game, sign in with security staff, and wait in the "janitors' room" - which, upon information and belief, was part of and/or adjacent to, the offices of the Superintendent of Maintenance – until the baseball game ended, at which time they would begin the clean up operation.

43.     At all times relevant hereto, a manager, upon information and belief employed by Defendant Baseball Park Management Company, would direct Mr. Jones and the other blowers and pickers, including calling Mr. Jones on radios to tell him what to do, to go faster, etc.

---

[16] Id. at 22.
[17] Id.

44. At all times relevant hereto, said manager typically wore a red shirt that had "Great American Ballpark" stitched or imprinted on it, and upon information and belief was named Dave Bartledge.

45. Upon information and belief, at all times relevant hereto Dave Bartledge's boss was Declan Mullin, Senior Director of Ballpark Operations for Defendant Baseball Park Management Company.

46. At all times relevant hereto, Defendant Kermit Smith was, upon information and belief, an employee of, and/or contractor for, and agent of Defendant Jani-King and/or Defendant Baseball Park Management Company, and was the "pay man" for Mr. Jones and the other blowers.

47. At all times relevant hereto, in order to be paid, every two weeks Mr. Jones had to meet Smith at various locations, for instance in the parking lot of a White Castle, where Smith would hand Mr. Jones an envelope with cash.

48. Defendant Smith would often tell Mr. Jones not to open the envelope until Jones got home. On numerous occasions, the amount of money in the envelope was less than the amount owed to Mr. Jones, and Smith irregularly provided receipts and/or paystubs.

49. Beyond being the "pay man," at all times relevant hereto Defendant Smith did little, if any, direct supervision or management of Mr. Jones' work or of the other post-game clean up workers.

50. Toward the end of July, 2010, Mr. Jones and several other blowers were called to Great American Ball Park for a meeting with Dave Bartledge, Defendant Smith, and Defendant Seylhouwer. Mr. Jones and the other blowers were informed that there were "problems with money" and that the blowers would have to wait until mid-September to be paid for having worked the remaining three July games and the twelve August home games.

51. Feeling that they had no other choice, Mr. Jones and the other blowers agreed to work the next fifteen home games without getting paid until mid-September.

52. Mr. Jones worked each of the three July 2010 home games and every August 2010 home game, but received no pay during that period for his work.

53. On or about September 13, 2010, Mr. Jones was only paid for the three games that he had worked in July but was led to believe that the wages owed him for the August games would be paid to him in the next few days.

54. However, Mr. Jones and the other blowers were never paid the remainder of the wages owed them.

55. The final home stand of the 2010 baseball regular season began on September 28, 2010. Prior to or around this date, Mr. Jones and the other blowers went to Dave Bartledge and told them that they still had not been fully paid, and that they would not work the remaining home games unless they received their back pay.

56. Dave Bartledge told Mr. Jones and the other blowers that he would make sure they received their back wages, if they agreed to work the remainder of the home games, which Mr. Jones and the other blowers agreed to do.

57. Mr. Jones worked at least 13 of the regular season home games in September and October of 2010.

58. On or about the end of September or early October, Defendant Jani-King called Mr. Jones and asked him to be available to perform clean up work at Great American Ballpark for any playoff games, promising that if he worked the playoff games Jani-King would also pay him "whatever back pay Kermit [Smith] owes you."

59. Mr. Jones agreed to work at the playoff games, and worked as a blower cleaning up the stadium for the one playoff game that took place at Great American Ballpark on October 10, 2010.

60. Despite the various promises by Dave Bartledge and Jani-King, Mr. Jones was never paid for the 12 home games he worked cleaning up Great American Ball Park during the month of August, 2010.

61. As a result of being denied a month's worth of wages, Mr. Jones fell behind on his rent, was evicted from his apartment and became homeless.

## COUNT ONE

### Violation of the Fair Labor Standards Act (29 U.S.C. 201 *et seq.*)

62. Plaintiff realleges and incorporates each and every allegation in the foregoing paragraphs as if hereby fully restated.

63. At all times relevant hereto, Defendant Kermit Smith was a "person" and an "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(a) and (b).

64. At all times relevant hereto, Defendant Blake Seylhouwer was a "person" and an "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(a) and (b).

65. At all times relevant hereto, Defendant B & B Franchising LLC was a "person" and an "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(a) and (b).

66. At all times relevant hereto, Defendant Baseball Park Management Company LLC was a "person" and an "employer" within the meaning of the FLSA, 29 U.S.C. §§ 203(a) and (b).

67. For the purposes of the FLSA, the meaning of "employ" includes "to suffer or permit to work." 29 U.S.C. §203(g).

68. At all times relevant hereto, Plaintiff Iving Jones was an "employee" within the meaning of 29 U.S.C. §203(e)(1) and was employed by, and/or jointly employed by the defendants within the meaning of FLSA and 29 C.F.R. §791.2.

69. At all times relevant hereto, as an employee of the defendants, Plaintiff Iving Jones was engaged in commerce and/or was employed in an enterprise engaged in commerce.

70. At all times relevant hereto, Plaintiff Iving Jones performed work which simultaneously benefited Baseball Park Management Company, LLC, B & B Franchising LLC ("Jani-King of Cincinnati"), Blake Seylhouwer and Kermit Smith.

71. At all times relevant hereto, Kermit Smith acted directly and/or indirectly in the interests of B & B Franchising LLC ("Jani-King of Cincinnati"), Blake Seylhouwer and/or Baseball Park Management Company LLC in relation to Iving Jones.

72.     At all times relevant hereto, Blake Seylhouwer acted directly and/or indirectly in the interests of B & B Franchising LLC ("Jani-King of Cincinnati"), Blake Seylhouwer and/or Baseball Park Management Company, LLC in relation to Iving Jones.

73.     At all times relevant hereto B & B Franchising LLC ("Jani-King of Cincinnati") acted directly and/or indirectly in the interests of Baseball Park Management Company LLC, Blake Seylhouwer and/or Kermit Smith in relation to Iving Jones.

74.     At all times relevant hereto, Baseball Park Management Company LLC exercised meaningful control over the work performed by Iving Jones, including but not limited to hours worked and working conditions.

75.     At all times relevant hereto, Baseball Park Management Company LLC required Mr. Jones and the other blowers to perform work that is an integral part of Baseball Park Management Company's business.

76.     By requiring Mr. Jones and the other blowers to perform work integral to Baseball Park Management Company's business, Mr. Jones and the other blowers were dependent on Baseball Park Management as a matter of economic reality.

77.     In conjunction with Baseball Park Management Company, at all times relevant hereto B & B Franchising LLC ("Jani-King of Cincinnati") exercised meaningful control over the work performed by Iving Jones, including but not limited to hours worked and working conditions.

78.     At all times relevant hereto, B & B Franchising ("Jani-King of Cincinnati") and/or Blake Seylhouwer required Mr. Jones and the other blowers to perform work that is an integral part of the business of Blake Seylhouwer and/or B & B Franchising LLC.

79.     By requiring Mr. Jones and the other blowers to perform work integral to the business of B & B Franchising LLC and/or Blake Seylhouwer, Mr. Jones and the other blowers were dependent on B & B Franchising LLC and/or Blake Seylhouwer as a matter of economic reality.

80.     As joint employers, the defendants are individually and jointly liable for violations of the FLSA. *See* 29 C.F.R. § 791.2.

81. Upon information and belief, the records, if any, concerning the hours Mr. Jones was required to work and for which he has not been compensated, are in the exclusive possession of the Defendants.

82. Upon information and belief, Defendants may not have accurately recorded the work hours for which Mr. Jones was not compensated but Defendants suffered and permitted Mr. Jones to work those hours. Plaintiff does not know at this time the exact amount owing but can establish the amount and extent of work as a matter of just and reasonable inference.

83. By failing to pay any wages to Plaintiff Iving Jones for the hours Mr. Jones worked in August of 2010 while employed by the defendants, defendants' willfully and with reckless disregard violated the FLSA, 29 U.S.C. §§ 206 and 215(a)(2).

**COUNT TWO**

**Violations of the Ohio Constitution and O.R.C. §4111.01 *et seq.***

84. Plaintiff realleges and incorporates each and every allegation in the foregoing paragraphs as if hereby fully restated.

85. At all times relevant hereto, Defendants were "employers" and Plaintiff was an "employee" within the meaning of the Ohio Minimum Fair Wage Standards Act (OMFWSA), O.R.C. § 4111.01*et seq.* and the Ohio Constitution, Article II, and said terms have the same meanings as in the Fair Labor Standards Act. O.R.C. § 4111.14(B).

86. The OMFWSA requires an employer to pay each of its employees the legally required minimum wage for all hours worked. O.R.C. § 4111.02

87. By failing to pay any wages to Plaintiff Iving Jones for the hours Mr. Jones worked in August of 2010 while employed by the defendants, defendants willfully and with reckless disregard violated O.R.C. §§ 4111.02 and 4111.13(C) and Article II §34a of the Ohio Constitution.

**COUNT THREE**

**Unjust Enrichment/Quantum Meruit**

88. Plaintiff realleges and incorporates each and every allegation in the foregoing paragraphs as if hereby fully restated.

89. Plaintiff conferred a benefit upon each and every defendant by laboring for hours cleaning up Great American Ballpark after each of the August, 2010 home games of the Cincinnati Reds.

90. Each and every defendant had knowledge of the benefit conferred upon them by Plaintiff, and unjustly retained the benefit of Plaintiff's labor without compensating Plaintiff.

91. The defendants have thereby been unjustly enriched by the benefits conferred by Plaintiff, and Plaintiff is entitled to just compensation for the reasonable value of the services rendered to the defendants.

**COUNT FOUR**

**Violation of O.R.C. § 4113.15**

92. Plaintiff realleges and incorporates each and every allegation in the foregoing paragraphs as if hereby fully restated.

93. Defendants have failed to pay Plaintiff all wages owed to him within thirty days of the regularly scheduled payday for the pay periods of August 2010 in which Plaintiff worked.

94. Accordingly, defendants are liable for those wages and an additional amount as liquidated damages.

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. An Order declaring that the Defendants violated the Fair Labor Standards Act;

B. An Order declaring that the Defendants' violations of the FLSA were willful;

C. An Order granting judgment to Plaintiff for his claims of unpaid wages as enumerated by the Fair Labor Standards Act, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4113.15, as well as an equal amount in liquidated damages;

D. An Order granting judgment to Plaintiff for his claim of unjust enrichment and an award of just compensation for the reasonable value of Plaintiff's services;

E. An Order awarding Plaintiff's costs and reasonable attorney's fees.

Respectfully submitted,

Terence R. Brennan, Esq. (0083423)
THE BRENNAN LAW OFFICE
810 Sycamore Street, 2nd Floor
Cincinnati, Ohio 45202
Ph: 513.381.1172
Fx: 513.263.9081
Email: terence@tbrennanlaw.com

Attroney for Plaintiff

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury to hear and determine the issues of the above-captioned case.

Terence R. Brennan